**RIGRODSKY LAW, P.A.**
Gina M. Serra (#361172)
1091 N. Palm Canyon Drive, Suite 9
Palm Spring, CA 92262
Telephone: (760) 406-8009
Facsimile: (302) 654-7530
Email: gms@rl-legal.com

*Counsel for Plaintiff Jack Pittrof and*
*[Proposed] Co-Lead Counsel for Plaintiffs*

[Additional Counsel on Signature Block]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

JACK PITTROF, Derivatively on Behalf of Nominal Defendant FORTINET, INC.,

Plaintiff,

v.

KEN XIE, MICHAEL XIE, KENNETH A. GOLDMAN, MING HSIEH, JEAN HU, JANET NAPOLITANO, JUDITH SIM, JAMES STAVRIDIS, KEITH JENSEN, and CHRISTIANE OHLGART,

Defendants,

and

FORTINET, INC.,

Nominal Defendant.

Case No.: 3:25-cv-08592-AMO

**PLAINTIFFS' MOTION TO CONSOLIDATE RELATED DERIVATIVE ACTIONS AND TO APPOINT CO-LEAD COUNSEL**

Date: March 5, 2026
Time: 2:00 p.m.
Courtroom: 10
Judge: Hon. Araceli Martínez-Olguín

*[Additional captions on following page]*

| | |
|---|---|
| MICHAEL J. MARRINAN, Derivatively on Behalf of FORTINET, INC.,<br><br>Plaintiff,<br><br>v.<br><br>KEN XIE, MICHAEL XIE, KEITH JENSEN, CHRISTIANE OHLGART, KENNETH A. GOLDMAN, MING HSIEH, JEAN HU, JANET NAPOLITANO, JUDITH SIM and JAMES STAVRIDIS,<br><br>Defendants,<br><br>and<br><br>FORTINET, INC.,<br><br>Nominal Defendant. | Case No.: 5:25-cv-09546-AMO |
| BRYAN FOSTER, derivatively on behalf of FORTINET, INC.,<br><br>Plaintiff,<br><br>v.<br><br>KEN XIE, MICHAEL XIE, KEITH JENSEN, CHRISTIANE OHLGART, KENNETH A. GOLDMAN, MING HSIEH, JEAN HU, JANET NAPOLITANO, JUDITH SIM, JAMES STAVRIDIS, AND MARY AGNES WILDEROTTER,<br><br>Defendants,<br><br>and<br><br>FORTINET, INC.,<br><br>Nominal Defendant. | Case No.: 5:25-cv-09611-AMO |

*[Additional caption on following page]*

| | |
|---|---|
| LR TRUST, derivatively on behalf of FORTINET, INC.,<br><br>Plaintiff,<br><br>v.<br><br>KEN XIE, MICHAEL XIE, KENNETH A. GOLDMAN, MING HSIEH, JEAN HU, JANET NAPOLITANO, JUDITH SIM, JAMES STAVRIDIS, MARY AGNES WILDEROTTER, KEITH JENSEN, and CHRISTIANE OHLGART,<br><br>Defendants,<br><br>and<br><br>FORTINET, INC.,<br><br>Nominal Defendant. | Case No.: 5:25-cv-10350-AMO |

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ ii

STATEMENT OF ISSUES TO BE DECIDED ........ 1

MEMORANDUM OF POINTS AND AUTHORITIES ........ 1

I. INTRODUCTION ........ 1

II. FACTUAL AND PROCEDURAL BACKGROUND ........ 2

A. Factual Background and Overview of the Claims ........ 2

B. Procedural Background ........ 4

III. ARGUMENT ........ 6

A. Consolidation of the Related Derivative Actions Is Appropriate ........ 6

1. There are Common Questions of Fact and Law ........ 6

2. Consolidation will Promote Judicial Economy and Efficiency for the Parties ........ 7

B. RL and GM&E Should Be Appointed Co-Lead Counsel for the Consolidated Action . 8

1. A Leadership Structure is Necessary for the Effective Prosecution of the Consolidated Action ........ 8

2. The Quality of the Pleadings, Efforts and Ability to Prosecute the Lawsuits and Work Cooperatively Supports RL and GM&E as Co-Lead Counsel ........ 9

3. RL and GM&E Are Experienced in Achieving Successful Results on Behalf of Corporations in Derivative Matters ........ 10

IV. CONCLUSION ........ 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Berg v. Guthart*,
Case No. 5:14-cv-00515, 2014 WL 3749780 (N.D. Cal. July 30, 2014) ................................ 9

*Burnett v. Rowzee*,
No. SACV07-641, 2007 WL 4191991 (C.D. Cal. Nov. 26, 2007).......................................... 8

*Casper v. Song Jinan*,
No. 12 CIV. 4202, 2012 WL 3865267 (S.D.N.Y. Sept. 6, 2012).......................................... 12

*Easton v. Bailey*,
No. CV 12-01716, 2013 WL 12323847 (C.D. Cal. Jan. 4, 2013) ...................................... 8, 9

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014)................................................................................................................ 13

*Gilbert v. Perlman*,
C.A. No. 2018-0453-SG (Del. Ch. Apr. 26, 2022) ................................................................. 11

*Hacker v. Peterschmidt*,
No. C 06-03468, 2006 WL 2925683 (N.D. Cal. Oct. 12, 2006)............................................. 8

*In re AcelRx Pharmaceuticals, Inc. Derivative Litig.*,
Case No. 5:21-cv-05197 (N.D. Cal.) ....................................................................................... 10

*In re Altria Group, Inc. Derivative Litig.*,
No. CL20-705 (Va. Cir. Ct., Henrico Cnty.) ............................................................................ 12

*In re Apple Inc. S'holder Derivative Litig.*,
No. 19-cv-05153, 2020 WL 3507426 (N.D. Cal. June 29, 2020).......................................... 10

*In re Facebook Inc. Derivative Litig.*,
C.A. No. 2018-0307 (Del. Ch.)................................................................................................ 12

*In re Oclaro, Inc. Derivative Litig.*,
No. C-11-3176, 2011 WL 4345099 (N.D. Cal. Sept. 14, 2011).............................................. 8

*In re Oreck Corp. Halo Vacuum & Air Purifiers Mktg. & Sales Pracs. Litig.*,
282 F.R.D. 486 (C.D. Cal. 2012).............................................................................................. 7

*In re Petco Health and Wellness Company, Inc. Derivative Litigation*,
Case No. 3:25-cv-01985 (S.D. Cal.)........................................................................................ 10

*In re Quantumscape Corp. Derivative Litig.*,
Case No. 3:21-cv-00989 (N.D. Cal.) .................................................................... 10

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
No. 16-cv-05541, 2017 WL 130282 (N.D. Cal. Jan. 12, 2017)............................................... 8

*Invs. Rsch. Co. v. U.S. Dist. Ct. for C.D. Cal.*,
877 F.2d 777 (9th Cir. 1989) ......................................................................... 6

*Kux-Kardos v. VimpelCom Ltd.*,
151 F. Supp. 3d 471 (S.D.N.Y. 2016)....................................................................... 12

*Lee ex rel Coherent, Inc. v. Ambroseo*,
No. C 07-0955, 2007 WL 1558565 (N.D. Cal. May 29, 2007) ............................................... 8

*Mason-Mahon v. Flint*,
166 A.D.3d 754 (N.Y. 2d Dep't 2018)....................................................................... 11

*Nicolow v. Hewlett Packard Co.*,
No. 12-05980, 2013 WL 792642 (N.D. Cal. Mar. 4, 2013) ............................................... 8, 9

*PG&E "San Bruno Fire" Cases*,
Case No. JCCP 4648-C (Cal. Super. Ct.) ................................................................ 11

*Power Integrations, Inc. v. Chan-Woong Park*,
No. 16-cv-02366, 2019 WL 119969 (N.D. Cal. Jan. 7, 2019)............................................ 6, 8

*Sandys v. Willard*,
No. 20-cv-05480, 2021 WL 1091919 (N.D. Cal. Mar. 22, 2021) ........................................... 6

*Sparano v. Lief*,
No. 10CV2079, 2011 WL 830109 (S.D. Cal. Mar. 3, 2011)................................................. 10

*Sw. Marine, Inc. v. Triple A Machine Shop, Inc.*,
720 F. Supp. 805 (N.D. Cal. 1989) ........................................................................ 6

*Mason-Mahon v. Flint*,
Index No. 602052/2014 (New York Sup. Ct.) .............................................................. 11

*Zhu v. UCBH Holdings, Inc.*,
682 F. Supp. 2d 1049 (N.D. Cal. 2010) ................................................................... 6

**Rules**

Fed. R. Civ. P. 42 ........................................................................................ 2, 6, 8

**Other Authorities**

Manual For Complex Litigation (Fourth) § 10.224 (2004) .......................................................... 9

TO: ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD

**PLEASE TAKE NOTICE** that on March 5, 2026, at 2:00 p.m. or as soon thereafter as the matter may be heard, in Courtroom 10 on the 19th Floor of the United States District Court for the Northern District of California, San Jose Division, before the Honorable Araceli Martínez-Olguín, Plaintiffs Jack Pittrof, Michael J. Marrinan, and Bryan Foster ("Plaintiffs"), through their undersigned counsel, will and hereby do move the Court for an order to: (i) consolidate the four above-captioned related shareholder derivative actions; and (ii) appoint the law firms of Rigrodsky Law, P.A. ("RL"), and Gainey McKenna & Egleston ("GM&E") as Co-Lead Counsel of the consolidated action (the "Motion"). The Motion is supported by the Memorandum of Points and Authorities below and the accompanying Declaration of Gina M. Serra in Support of Plaintiffs' Motion to Consolidate Related Derivative Actions and to Appoint Co-Lead Counsel ("Serra Decl."), dated January 13, 2026.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the four above-captioned Related Derivative Actions (defined below) should be consolidated pursuant to Rule 42(a) of the Federal Rules of Civil Procedure; and

2. Whether to appoint the law firms of RL and GM&E as Co-Lead Counsel in the consolidated action.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The four above-captioned cases are shareholder derivative actions brought on behalf of nominal defendant Fortinet, Inc. ("Fortinet" or the "Company") against current and former members of the Company's Board of Directors (the "Board") and certain of its executive officers seeking to remedy their breaches of fiduciary duties and violations of federal law that caused substantial harm to the Company. The Court granted administrative motions to relate three of the Related Derivative Actions on December 12, 2025, and the fourth action on January 2, 2026. The

Related Derivative Actions allege that the Individual Defendants[1] breached their fiduciary duties to the Company by, *inter alia*, making false and misleading statements concerning the number of customers who had outdated security software and the amount of revenue that this could generate for the Company.

The Related Derivative Actions present substantially identical issues regarding the directors' and officers' alleged breach of fiduciary duties to Fortinet that arise from the same transactions and events, and will necessitate the same motion practice and discovery, and raise the same trial issues. Therefore, consolidation is a logical step to foster judicial economy by eliminating duplicative litigation and conserve the resources of the parties and the Court. Accordingly, Plaintiffs submit that the Related Derivative Actions should be consolidated under Rule 42(a) of the Federal Rules of Civil Procedure.

Additionally, in order to further the efficiencies provided by consolidation, Plaintiffs respectfully submit that the law firms of RL and GM&E should be appointed Co-Lead Counsel of the consolidated action.[2] RL and GM&E are well suited to lead this derivative litigation in a manner consistent with factors often considered by courts, and are demonstrably able to work communally with other plaintiffs' counsel, a characteristic that is highly valuable when determining the appointment of lead counsel, as set forth herein.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background and Overview of the Claims[3]

---

[1] The Individual Defendants are Ken Xie, Michael Xie, Kenneth A. Goldman, Ming Hsieh, Jean Hu, Janet Napolitano, Keith Jensen, Christiane Ohlgart, Judith Sim, James Stavridis, and Mary Agnes Wilderotter.

[2] Defendants agree that consolidation is appropriate and have taken no position on the appointment of Co-Lead Counsel.

[3] The facts recited herein are taken from the first-filed Verified Shareholder Derivative Complaint in the Related Derivative Actions filed in *Pittrof v. Xie, et al.*, Case No. 3:25-cv-08592-AMO, ECF No. 1 (the "*Pittrof* Action") ("*Pittrof* Compl.").

Fortinet is a cybersecurity company headquartered in Sunnyvale, California that provides security products, including firewalls. *Pittrof* Compl., ¶¶ 3, 20, 62. A firewall is a network security device designed to monitor, filter, and control incoming and outgoing network traffic based on predetermined security rules. *Id.* ¶ 3. Fortinet's main firewall product is called FortiGate. *Id.*

In November 2024, Fortinet claimed that five older FortiGate models were going to reach the end of their service life (also referred to as "End of Support" or "EOS") at the same time. *Id.*, ¶ 63. Fortinet's customers would be required to upgrade their firewalls, which Fortinet refers to as a "refresh cycle." *Id.*, ¶ 4. Fortinet claimed that this refresh cycle would boost product revenue, as customers would likely purchase new hardware and renew or expand their product subscriptions. *Id.* Fortinet claimed that the refresh cycle was "by far the largest we've seen probably ever" and would generate "$400 million to $450 million in product revenue." *Id.*

In reality, the Individual Defendants knew that the refresh cycle was never going to be as lucrative as they represented. *Id.*, ¶ 90. During the COVID-19 pandemic, many customers upgraded their products. *Id.*, ¶ 65. The customers who still had the older models made up a "small percentage" of the Company's business. *Id.*, ¶ 5.

Defendants also misrepresented and concealed that they did not have a clear picture of the true number of FortiGate firewalls that could be upgraded. *Id.*, ¶ 90. While telling investors that the refresh would gain momentum over the course of two years, the Individual Defendants caused Fortinet to misrepresent and conceal that it had aggressively pushed through roughly half of the refresh cycle in a period of just a few months, by the end of the Second Quarter of 2025. *Id.*

On August 6, 2025, after the markets closed, Defendants revealed during the Company's Second Quarter 2025 earnings call that Fortinet was already "approximately 40% to 50% of the way through the 2026 upgrade cycle at the end of the second quarter [of 2025]." *Id.*, ¶ 6. During the call, a Wall Street analyst asked, "why are we not seeing more upside in the numbers this year from the refresh cohort," given "that we are 40% to 50% through" "a really big or larger than normal refresh cohort?" *Id.* In response, Defendants: (i) admitted that "it's hard[] for us to predict"

the total number of FortiGates requiring an upgrade; (ii) suggested customers had "excess [firewall] capacity from [purchasing firewalls in] prior years" and therefore did not need to upgrade; and (iii) revealed that the refresh could not have had "much business impact" as it consisted of only a "small percentage" of the Company's business because the products were "12 to 15 years" old and had been sold at a time when Fortinet's business was 5 to 10 times smaller, meaning that the total number of FortiGates eligible for an upgrade was inherently limited. *Id.*

After the truth was revealed, the price of Fortinet common stock fell over 22%, from $96.58 per share on August 6, 2025, to $75.30 per share on August 7, 2025, on unusually high trading volume. *Id.*, ¶ 7.

**B. Procedural Background**

On October 8, 2025, Plaintiff Jack Pittrof, represented by RL, filed the first shareholder derivative action in this Court on behalf of Fortinet to recover the harms caused to it by the Individual Defendants in connection with the wrongdoing described above, in the *Pittrof* Action. Specifically, Plaintiff Pittrof asserts violations of Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 (the "Exchange Act"), breaches of fiduciary duties, aiding and abetting breaches of fiduciary duties, unjust enrichment, and waste of corporate assets by Defendants Ken Xie, Michael Xie, Kenneth A. Goldman, Ming Hsieh, Jean Hu, Janet Napolitano, Keith Jensen, and Christiane Ohlgart.

On November 5, 2025, Plaintiff Michael J. Marrinan, represented by GM&E, filed a second shareholder derivative action in this Court on behalf of Fortinet asserting substantially similar claims to the *Pittrof* Action against Defendants Ken Xie, Michael Xie, Kenneth A. Goldman, Ming Hsieh, Jean Hu, Janet Napolitano, Keith Jensen, Christiane Ohlgart, Judith Sim and James Stavridis in connection with the same wrongdoing as described above in the case captioned, *Marrinan v. Xie*, *et al.*, Case No. 5:25-cv-09546-AMO (the "*Marrinan* Action").

On November 6, 2025, Plaintiff Bryan Foster, represented by The Brown Law Firm, P.C. ("Brown Law"), filed a third shareholder derivative action in this Court on behalf of Fortinet

asserting substantially similar claims as the *Pittrof* Action against Defendants Ken Xie, Michael Xie, Kenneth A. Goldman, Ming Hsieh, Jean Hu, Janet Napolitano, Keith Jensen, Christiane Ohlgart, Judith Sim, James Stavridis, and Mary Agnes Wilderotter in connection with the same wrongdoing as described above in the case captioned, *Foster v. Xie, et al.*, Case No. 5:25-cv-09611-AMO (the "*Foster* Action").

In or around November 2025, RL, GM&E, and Brown Law conferred and discussed consolidation of the *Pittrof*, *Marrinan*, and *Foster* Actions. Serra Decl., ¶ 5. Based on this, on December 1, 2025, Plaintiffs Foster and Marrinan filed an unopposed administrative motion to relate the *Marrinan* and *Foster* Actions to the *Pittrof* Action. *Pittrof* Action, ECF No. 15.

Then, on December 2, 2025, LR Trust, represented by Weiss Law ("Weiss"), filed the fourth shareholder derivative action in this Court on behalf of Fortinet asserting substantially similar claims as the *Pittrof* Action against Defendants Ken Xie, Michael Xie, Kenneth A. Goldman, Ming Hsieh, Jean Hu, Janet Napolitano, Keith Jensen, Christiane Ohlgart, Judith Sim, James Stavridis, and Mary Agnes Wilderotter in connection with the same wrongdoing as described above in the case captioned, *LR Trust v. Xie, et al.*, Case No. 5:25-cv-10350-AMO (the "*LR Trust* Action") (together with the *Pittrof*, *Marrinan*, and *Foster* Actions, the "Related Derivative Actions"). On December 12, 2025, an order was entered in the *Marrinan* and *Foster* Actions relating the cases to the *Pittrof* Action and reassigning them from the Honorable Noel Wise to Judge Araceli Martínez-Olguín. *Pittrof* Action, ECF No. 16.

After the *LR Trust* Action was filed, Plaintiffs' counsel reached out to counsel for the *LR Trust* Action to discuss potential coordination of the related cases, but no definitive position was provided. Serra Decl., ¶ 7.

On December 17, 2025, pursuant to Civil L.R. 3-12, Plaintiffs filed an administrative motion to relate the *LR Trust* Action to the other three Related Derivative Actions, ECF No. 21. The motion to relate was not opposed and was granted by the Court on January 2, 2026. *See Pittrof* Action, ECF No. 22. Plaintiffs now seek consolidation of the Related Derivative Actions

and the appointment of RL and GM&E as Co-Lead Counsel to effectively organize the related litigation and conserve resources.

## III. ARGUMENT

### A. Consolidation of the Related Derivative Actions Is Appropriate

Pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, when two or more actions involve a common question of law or fact and are pending in the same district, the "district court has broad discretion … to consolidate" the actions. F. R. Civ. P. 42(a); *Invs. Rsch. Co. v. U.S. Dist. Ct. for C.D. Cal.*, 877 F.2d 777 (9th Cir. 1989). "In determining whether or not to consolidate cases, the Court should 'weigh the interest of judicial convenience against the potential for delay, confusion and prejudice.'" *Zhu v. UCBH Holdings, Inc.*, 682 F. Supp. 2d 1049, 1052 (N.D. Cal. 2010) (quoting *Sw. Marine, Inc. v. Triple A Machine Shop, Inc.*, 720 F. Supp. 805, 806-07 (N.D. Cal. 1989)). Here, all relevant considerations show that consolidation is warranted.

#### 1. <u>There are Common Questions of Fact and Law</u>

Consolidation is appropriate when multiple actions involve *any* "common question of law or fact." *Power Integrations, Inc. v. Chan-Woong Park*, No. 16-cv-02366, 2019 WL 119969, at *2 (N.D. Cal. Jan. 7, 2019) ("The Court need find only one issue of law or fact in common to permit consolidation"); *Sandys v. Willard*, No. 20-cv-05480, 2021 WL 1091919, at *4 (N.D. Cal. Mar. 22, 2021) ("A court may consolidate multiple actions on its docket if such actions involve a common question of law or fact."). Here, all four Related Derivative Actions involve substantially the same questions of law and fact.

As discussed above, the primary facts at issue in the Related Derivative Actions concern misstatements Defendants made or caused Fortinet to make about revenue the Company could make from upgrading FortiGate firewalls. *See Pittrof* Compl., ¶ 8; *Marrinan* Compl., ¶ 51; *Foster*

Compl., ¶ 8; *LR Trust* Compl., ¶¶ 2-6.[4] All four actions allege also, among others, that the Individual Defendants breached their fiduciary duties by making Fortinet repurchase its own stock at artificially inflated prices and by making improper insider sales based on their knowledge of material nonpublic information. *See Pittrof* Compl., ¶¶ 9-10; *Marrinan* Compl., ¶¶ 57-66; *Foster* Compl., ¶¶ 9, 10; *LR Trust* Compl., ¶¶ 83-89. Each of the Related Derivative Actions claim that demand upon the Company's Board would be futile and is therefore excused, as Fortinet's Directors are not independent or disinterested. *See Pittrof* Compl., ¶¶ 112-128; *Marrinan* Compl., ¶¶ 95-136; *Foster* Compl., ¶¶ 134-154; *LR Trust* Compl., ¶¶ 103-165.

The four Related Derivative Actions also assert overlapping claims. All cases assert claims for violations of the Section 10(b) of the Exchange Act, breach of fiduciary duty, and unjust enrichment. The *Foster* Action and the *LR Trust* Action also assert claims for violations of Section 14(a) and 14a-9 of the Exchange Act based on misstatements in the 2025 Proxy Statement in connection with the conduct described above and each of the Related Derivative Actions assert claims based on the Individual Defendants' insider sales. Thus, nearly identical questions of law and fact that predominate.

2. Consolidation will Promote Judicial Economy and Efficiency for the Parties

Consolidation is also appropriate because it would "serve[] the interests of judicial economy by promoting efficiency and saving time for purposes of [] discovery and motion practice." *In re Oreck Corp. Halo Vacuum & Air Purifiers Mktg. & Sales Pracs. Litig.*, 282 F.R.D. 486, 490 (C.D. Cal. 2012). Here, consolidation would not cause undue delay, confusion, or unfair prejudice. To the contrary, the Related Derivative Actions will share many (if not all) of the same witnesses and documents and are likely to have overlapping disputes. Consolidation will allow

[4] These citations refer to the Verified Shareholder Derivative Complaint in the *Marrinan* Action, *Foster* Action and *LR Trust* Action. *Marrinan* Action, ECF No. 1; *Foster* Action, ECF No. 1; *LR Trust* Action, ECF No. 1.

the Court and parties to avoid inconsistent rulings and duplicative motion practice or discovery. These are the precise efficiencies that Rule 42(a) was designed to achieve. F. R. Civ. P. 42(a); *see Burnett v. Rowzee*, No. SACV07-641, 2007 WL 4191991, at *6 (C.D. Cal. Nov. 26, 2007) (ordering consolidation to allow parties to "make and respond to fewer discovery requests," and "coordinate their motions to eliminate unnecessary and duplicitous [sic] arguments," and to "help the Court and the parties sort out the larger scheme at issue in this case"); *Power Integrations*, 2019 WL 119969, at *2 (consolidating cases where it would "significantly reduce[] the likelihood of duplicative discovery and eliminate[] the burden on witnesses to appear in two separate cases[.]").

Accordingly, for the foregoing reasons, consolidation under Rule 42(a) is appropriate.

**B. RL and GM&E Should Be Appointed Co-Lead Counsel for the Consolidated Action**

1. A Leadership Structure is Necessary for the Effective Prosecution of the Consolidated Action

Courts have broad discretion to appoint lead counsel to ensure effective and efficient prosecution of consolidated actions. *See In re Oclaro, Inc. Derivative Litig.*, No. C-11-3176, 2011 WL 4345099, at *2 (N.D. Cal. Sept. 14, 2011). Courts in the Ninth Circuit and across the country routinely appoint lead or co-lead counsel in derivative cases. *See, e.g.*, *Lee ex rel Coherent, Inc. v. Ambroseo*, No. C 07-0955, 2007 WL 1558565, at *2 (N.D. Cal. May 29, 2007) (appointing co-lead counsel for consolidated derivative action); *In re Wells Fargo & Co. S'holder Derivative Litig.*, No. 16-cv-05541, 2017 WL 130282, at *3 (N.D. Cal. Jan. 12, 2017) (same); *Nicolow v. Hewlett Packard Co.*, No. 12-05980, 2013 WL 792642, at *7 (N.D. Cal. Mar. 4, 2013) (appointing lead counsel for derivative action); *Hacker v. Peterschmidt*, No. C 06-03468, 2006 WL 2925683, at *5 (N.D. Cal. Oct. 12, 2006) (appointing co-lead counsel in derivative action).

"Courts consider a variety of factors when appointing a lead counsel in consolidated derivative actions, including: '(1) the quality of the pleadings; (2) the vigorousness of the prosecution of the lawsuits; and (3) the capabilities of counsel.'" *Easton v. Bailey*, No. CV 12-

01716, 2013 WL 12323847, at *1 (C.D. Cal. Jan. 4, 2013). Here, Plaintiffs submit that the law firms of RL and GM&E are well-qualified to serve as Co-Lead Counsel.

2. <u>The Quality of the Pleadings, Efforts and Ability to Prosecute the Lawsuits and Work Cooperatively Supports RL and GM&E as Co-Lead Counsel</u>

RL and GM&E possess the financial resources, personnel, and substantive expertise necessary to litigate the Related Derivative Actions vigorously, and have served, and will continue to serve, the best interests of plaintiffs on behalf of the Company. In addition to their wealth of experience, RL and GM&E have the ability and resources to devote to the effective and efficient prosecution of this matter. As already shown by the efforts put into the comprehensive complaints, described above, RL and GM&E will not shy away from the work needed to prosecute the derivative actions. *See* Manual For Complex Litigation (Fourth) § 10.224 (2004) (the court's responsibilities in appointing lead counsel include assessing counsel's qualifications, experience, competence, and commitment to prosecuting action on behalf of plaintiffs).

While Plaintiffs' respective complaints are the result of high-quality investigation and diligence by respective counsel, the complaint filed in the *Pittroff* Action was also the first of the Related Derivative Actions to be filed. *Easton*, 2013 WL 12323847, at *1 ("Where 'consideration of other relevant factors does not tilt heavily in either direction and there is a need for an objective tie-breaker,' courts may also consider which party was first to file a complaint.") (internal citations removed).

Moreover, RL and GM&E's efforts to coordinate the Related Derivative Actions by seeking to work cooperatively with other plaintiffs' counsel, and Plaintiff Foster's support for this leadership structure, further support their appointment as Co-Lead Counsel. *See Berg v. Guthart*, Case No. 5:14-cv-00515, 2014 WL 3749780, at *7 (N.D. Cal. July 30, 2014) (appointing counsel that "made the most concerted effort to be inclusive of the other plaintiffs [ ] by suggesting on multiple occasions to joint prosecution and a co-plaintiff leadership structure" as lead counsel); *Nicolow*, 2013 WL 792642, at *8 (appointing as lead plaintiff and counsel the party who took an

"inclusive approach to working with other plaintiffs and co-counsel in this case"); *In re Apple Inc. S'holder Derivative Litig.*, No. 19-cv-05153, 2020 WL 3507426, at *1 (N.D. Cal. June 29, 2020) ("Although not dispositive, the fact that a large majority of plaintiffs favor one of two proposed leadership structures carries considerable weight").

RL and GM&E also have a demonstrated history of working effectively with other plaintiffs' counsel, like Brown Law, and have been appointed lead and/or co-lead counsel numerous shareholder derivative cases. *See, e.g., In re Petco Health and Wellness Company, Inc. Derivative Litigation*, Case No. 3:25-cv-01985 (S.D. Cal.), ECF No. 18 ("Having reviewed [The Brown Law Firm's and Rigrodsky Law's] resumes and considered each firm's experience with shareholder derivative suits, the Court finds each law firm independently qualified to serve as lead counsel in this litigation"); *In re Quantumscape Corp. Derivative Litig.*, Case No. 3:21-cv-00989 (N.D. Cal.), ECF No. 21 (appointing GM&E and Brown Law as Co-Lead Counsel); *In re AcelRx Pharmaceuticals, Inc. Derivative Litig.*, Case No. 5:21-cv-05197 (N.D. Cal. Sept. 30, 2025), ECF No. 23 (same). Accordingly, because both firms are well-qualified to protect the interests of Fortinet and its shareholders, and have made demonstrated efforts to work cooperatively with plaintiffs' counsel in this matter, RL & GM&E should be appointed Co-Lead Counsel.

3. RL and GM&E Are Experienced in Achieving Successful Results on Behalf of Corporations in Derivative Matters

In particular, RL is well capitalized, fully capable, and prepared to staff and finance this derivative litigation and has extensive experience in handling complex shareholder derivative litigation, having served as lead or co-lead counsel in numerous derivative cases around the country, and having secured a number of significant recoveries. *See* Serra Decl., Ex. A (firm resume of RL); *see also Sparano v. Lief*, No. 10CV2079, 2011 WL 830109, at *3 (S.D. Cal. Mar. 3, 2011) (appointing lead counsel to firm with "significant experience in serving as lead counsel in derivative and class actions," a "history of obtaining favorable results," and "the resources and expertise to fulfill the role as lead counsel[.]").

The attorneys of RL have decades of litigation experience, have garnered favorable judicial comment on their efforts, and have achieved precedent-setting victories on behalf of investors in numerous corporate class actions and shareholder derivative lawsuits filed throughout the United States. For example, in *Gilbert v. Perlman*, C.A. No. 2018-0453 (Del. Ch. Apr. 26, 2022), Tr. at 25:22-26:4, Vice Chancellor Glasscock of the Delaware Chancery Court stated, "I also congratulate you, [RL]…. I think this was a very good settlement for the class. It obviously was litigated hard, mediated hard, and is an example of how corporate litigation ought to proceed in this Court."

Likewise, RL served as co-lead counsel in a derivative action against past and present members of the board of directors of HSBC Holdings PLC ("HSBC") and its various U.S. subsidiaries. After successfully achieving a reversal of dismissal of the action on appeal (*see Mason-Mahon v. Flint*, 166 A.D.3d 754 (N.Y. 2d Dep't 2018)), and following the denial of defendants' appellate motion for reargument, or certification to the New York Court of Appeals, the plaintiffs achieved a $72.5 million cash settlement on behalf of HSBC. In addition, HSBC agreed to certain corporate governance enhancements to bolster its anti-money laundering and sanctions compliance policies and procedures. The $72.5 million cash component of the settlement is believed to be the first derivative cash settlement against a foreign corporation, as well as the sixteenth largest derivative cash settlement at the time, in the *United States. Mason-Mahon, et al. v. Flint, et al.*, Index No. 602052/2014 (New York Sup. Ct.).

In *PG&E "San Bruno Fire" Cases*, Case No. JCCP 4648-C (Cal. Super. Ct.), RL initiated an action on behalf of the shareholders of PG&E Corporation ("PG&E") in connection with the tragic loss of life and property, and helped those shareholders recover $90 million for the company, then the seventh largest shareholder derivative settlement on record. In addition, to improve and ensure pipeline safety, plaintiffs also obtained comprehensive gas operations improvements with a stipulated value of $32.05 million.

Similarly, GM&E has extensive experience in handling derivative actions and complex lawsuits as they have prosecuted numerous securities, class action, and derivative shareholder cases, and therefore possess substantial knowledge about the applicable law. Furthermore, GM&E has been found by various courts to have the necessary experience and resources to vigorously litigate class actions and derivative actions as lead or co-lead counsel. *See Casper v. Song Jinan*, No. 12 CIV. 4202, 2012 WL 3865267, at *3 (S.D.N.Y. Sept. 6, 2012) ("We find that [Gainey McKenna & Egleston] has the experience and resources necessary to adequately litigate this case."); *Kux-Kardos v. VimpelCom Ltd*., 151 F.Supp.3d 471, 479 (S.D.N.Y. 2016) ("Gainey McKenna & Egleston […] is qualified, experienced and generally able to conduct the litigation.").

As reflected in its firm resume (*see* Serra Decl., Ex. B), GM&E has obtained significant recoveries for the benefit of several companies in derivative actions across the country. For example, GM&E served as co-lead counsel in a derivative matter entitled *In re Altria Group, Inc. Derivative Litig.*, Civil Action No. CL20-705 (Va. Cir. Ct., Henrico Cnty.) and received approval for a funding commitment by Altria of $117 million over 5 years, which will be deployed to fund Altria's programs to prevent underage use of tobacco and existing or newly developed nicotine delivery system products, including e-vapor products. GM&E also assisted, as part of the executive committee of plaintiffs' counsel and additional counsel for plaintiffs, in the prosecution of the shareholder derivative action brought on behalf of Meta Platforms, Inc. (*f/k/a* Facebook, Inc.) which recently settled for $190 million in the Delaware Court of Chancery. *See In re Facebook Inc. Derivative Litig.*, C.A. No. 2018-0307 (Del. Ch.). In addition, as lead or co-lead counsel, GM&E has recently obtained valuable governance enhancements for companies including Zoom Video Communications, Inc., Blink Charging Co., loanDepot, Inc., Celsius Holdings, Inc., Funko Inc., Opendoor Technologies, Inc., Mullen Automotive, Inc., Arrow Financial Corp., and Flux Power Holdings, Inc., among others. *See* Serra Decl., Ex. B.

GM&E also set precedence with its successful prosecution of a class action appeal to the United States Supreme Court wherein the Court struck down a "presumption of prudence"

governing fiduciary conduct that lower courts had been using to protect the actions of fiduciaries of employer retirement plans who imprudently invested in company stock for the retirement plan. In the class action, *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409 (2014), GM&E, with co-counsel, argued that the presumption was illegitimate and had no place in the ERISA statutory framework. The Supreme Court agreed.

In sum, the relevant factors support the appointment of RL and GM&E as Co-Lead Counsel, as the firms are demonstrably equipped to vigorously prosecute the underlying claims and are willing and capable of coordinating effectively to help lead this litigation.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the attached [Proposed] Order Consolidating the Related Derivative Actions and Appointing Co-Lead Counsel.

Dated: January 13, 2026

Respectfully submitted,

**RIGRODSKY LAW, P.A.**
*/s/ Gina M. Serra*
Gina M. Serra (#361172)
1091 N. Palm Canyon Drive, Suite 9
Palm Spring, CA 92262
Telephone: (760) 406-8009
Facsimile: (302) 654-7530
Email: gms@rl-legal.com

*Counsel for Plaintiff Jack Pittrof and [Proposed] Co-Lead Counsel for Plaintiffs*

**THE BROWN LAW FIRM, P.C.**

*/s/ Robert C. Moest*
Robert C. Moest, Of Counsel, SBN 62166
2530 Wilshire Boulevard, Second Floor
Santa Monica, CA 90403
Telephone: (310) 915-6628
Facsimile: (310) 915-9897
Email: RMoest@aol.com

Timothy Brown
767 Third Avenue, Suite 2501
New York, NY 10017
Telephone: (516) 922-5427
Email: tbrown@thebrownlawfirm.net

*Counsel for Plaintiff Bryan Foster*

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Betsy C. Manifold (CA. Bar No. 182450)
Rachele R. Byrd (CA. Bar No. 190634)
Alex J. Tramontano (CA. Bar No. 276666)
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599
Email: manifold@whafh.com
Email: byrd@whafh.com
Email: tramontano@whafh.com

**GAINEY McKENNA & EGLESTON**
Thomas J. McKenna
Gregory M. Egleston
260 Madison Avenue, 22nd Floor
New York, NY 10016
Tel.: (212) 983-1300
Fax: (212) 983-0383
Email: tjmckenna@gme-law.com
Email: gegleston@gme-law.com

*Counsel for Plaintiff Michael J. Marrinan and [Proposed] Co-Lead Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 13, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the Electronic Mail Notice for this action.

*/s/ Gina M. Serra*
Gina M. Serra

**ELECTRONIC SIGNATURE ATTESTATION**

I am the ECF User whose identification and password are being used to file the foregoing. Pursuant to Civil Local Rule 5.1, I hereby attest that each of the other Signatories indicated by a /s/ have concurred in the filing of the document, which shall serve in lieu of their signatures on the document.

Dated: January 13, 2026

*/s/ Gina M. Serra*
Gina M. Serra