Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISS LAW**
1801 Century Park East, 24th Floor
Los Angeles, CA 90067
Telephone: (310) 208-2800
Facsimile: (310) 209-2348

*Counsel for Plaintiff LR Trust and [Proposed] Lead Counsel*

[Additional Counsel in Signature Block]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JACK PITTROF, derivatively on behalf of Nominal Defendant FORTINET INC.,<br><br>Plaintiff,<br><br>vs.<br><br>KEN XIE, MICHAEL XIE, KENNETH A. GOLDMAN, MING HSIEH, JEAN HU, JANET NAPOLITANO, JUDITH SIM, JAMES STAVRIDIS, KEITH JENSEN, and CHRISTIANE OHLGART,<br><br>Defendants,<br><br>and<br><br>FORTINET, INC.,<br><br>Nominal Defendant. | Case No.: 3:25-cv-08592-AMO<br><br>**NOTICE OF MOTION AND MOTION OF PLAINTIFF LR TRUST TO CONSOLIDATE RELATED DERIVATIVE ACTIONS AND TO APPOINT WEISS LAW LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: May 14, 2026<br>Time: 2:00 p.m.<br>Courtroom: 10<br>Judge: Hon. Araceli Martínez-Olguín |

*[Additional captions on following pages]*

| | |
|---|---|
| MICHAEL J. MARRINAN, derivatively on behalf of Nominal Defendant FORTINET INC.,<br><br>Plaintiff,<br><br>vs.<br><br>KEN XIE, MICHAEL XIE, KEITH JENSEN, CHRISTIANE OHLGART, KENNETH A. GOLDMAN, MING HSIEH, JEAN HU, JANET NAPOLITANO, JUDITH SIM, and JAMES STAVRIDIS,<br><br>Defendants,<br><br>and<br><br>FORTINET, INC.,<br><br>Nominal Defendant. | Case No.: 3:25-cv-09546-AMO |
| BRYAN FOSTER, derivatively on behalf of Nominal Defendant FORTINET INC.,<br><br>Plaintiff,<br><br>vs.<br><br>KEN XIE, MICHAEL XIE, KEITH JENSEN, CHRISTIANE OHLGART, KENNETH A. GOLDMAN, MING HSIEH, JEAN HU, JANET NAPOLITANO, JUDITH SIM, JAMES STAVRIDIS, and MARY AGNES WILDEROTTER<br><br>Defendants,<br><br>and<br><br>FORTINET, INC.,<br><br>Nominal Defendant. | Case No.: 3:25-cv-09611-AMO |

| | |
|---|---|
| LR TRUST, derivatively on behalf of FORTINET INC.,<br><br>Plaintiff,<br><br>vs.<br><br>KEN XIE, MICHAEL XIE, KENNETH A. GOLDMAN, MING HSIEH, JEAN HU, JANET NAPOLITANO, JUDITH SIM, JAMES STAVRIDIS, MARY AGNES WILDEROTTER, KEITH JENSEN, and CHRISTIANE OHLGART,<br><br>Defendants,<br><br>and<br><br>FORTINET, INC.,<br><br>Nominal Defendant. | Case No.: 3:25-cv-10350-AMO |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii

I. SUMMARY OF ARGUMENT ..... 1

II. PERTINENT FACTS ..... 4

A. Factual Background ..... 4

B. Procedural History and Plaintiffs' Negotiations ..... 6

III. THE RELATED ACTIONS SHOULD BE CONSOLIDATED ..... 6

IV. WEISS LAW SHOULD BE APPOINTED LEAD COUNSEL ..... 7

A. Weiss Law's Extensive Experience And Record Of Success Supports Its Appointment As Lead Counsel ..... 7

B. Weiss Law's High-Quality Pleading And Efforts To Coordinate And Advance The Litigation To Date Supports Appointment As Lead Counsel ..... 11

C. The Appointment of Weiss Law As Lead Counsel Promotes Efficiency And Prevents Duplication Of Effort ..... 13

V. CONCLUSION ..... 14

## TABLE OF AUTHORITIES

### Cases

*In re Apple Inc. Stockholder Derivative Litig.*, 2020 U.S. Dist. LEXIS 114375 (N.D. Cal. June 29, 2020) .......... 2

*Investors Research Co. v. U.S. Dist. Ct. for C.D. Cal.*, 877 F.2d 777 (9th Cir. 1989) .......... 6

*MacAlister v. Guterman*, 263 F.2d 65 (2d Cir. 1958) .......... 13

*RePET, Inc. v. Zhao*, 2016 U.S. Dist. LEXIS 197747 (C.D. Cal. June 28, 2016) .......... 12

*In re Rakuten Browser Extension Litig.*, 2025 U.S. Dist. LEXIS 135966 (N.D. Cal. July 16, 2025) .......... 13

*In re Rocket Fuel Inc. Derivative Litig.*, Case No. 15-cv-04625-PJH, 2016 U.S. Dist. LEXIS 115023 (N.D. Cal. Aug. 26, 2016) .......... 12

*Rubenstein v. Scripps Health*, 2021 U.S. Dist. LEXIS 192182 (C.D. Cal. October 5, 2021) .......... 13

*Sokolowski v. Adelson*, 14–CV–111 JCM, 2014 U.S. Dist. LEXIS 103901 (D. Nev. July 30, 2014) .......... 12

*Sparano v Lief*, 2011 U.S. Dist. LEXIS 21144 (C.D. Cal. March 3, 2011) .......... 13

*Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 774 (9th Cir. 1977) .......... 13

*In re Wells Fargo & Company Sh. Derivative Litig.,* 2017 WL 130282, No.16-cv-05541-JST (N.D. Cal. Jan. 12, 2017) .......... 7

### Rules

Fed. R. Civ. P. 42 .......... 2

## NOTICE OF MOTION AND MOTION

**TO: ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD**

PLEASE TAKE NOTICE that on May 14, 2026, at 2:00 p.m. or as soon thereafter as the matter may be heard, in Courtroom 10 on the 19th Floor of the United States District Court for the Northern District of California, before the Honorable Araceli Martínez-Olguín, Plaintiff LR Trust ("Movant"), through its undersigned counsel, will and hereby does move the Court for an order: (i) consolidating the captioned related shareholder derivative actions (the "Actions"); and (ii) appointing Weiss Law as Lead Counsel in the consolidated derivative action (the "Motion").[1] The Motion is based on (i) this notice; (ii) the incorporated Memorandum of Points and Authorities; (iii) the Declaration of Joel E. Elkins ("Elkins Decl.") in support of the Motion; (iv) the [Proposed] Order Granting Consolidation and Appointing Weiss Law Lead Counsel; (v) the complete files and records in these Actions; and (vi) such oral argument as the Court may consider in deciding the Motion.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether to consolidate the above-captioned actions pursuant to Rule 42(a) of the Federal Rules of Civil Procedure.
2. Whether to appoint Weiss Law as Lead Counsel for the consolidated derivative action.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. SUMMARY OF ARGUMENT

The plaintiffs in the Actions assert claims for, *inter alia*, violations of the federal securities laws, breaches of fiduciary duty, waste of corporate assets, and unjust enrichment on behalf of nominal defendant Fortinet, Inc. ("Fortinet" or the "Company") against certain of its officers and

[1] On January 13, 2026, Plaintiffs Jack Pittrof ("Pittrof"), Michael J. Marrinan ("Marrinan"), and Bryan Foster ("Foster," collectively, the "Competing Movants") moved to consolidate the Actions and to appoint Rigrodsky Law, P.A. ("RL"), and Gainey McKenna & Egleston ("GM&E") as Co-Lead Counsel of the consolidated Actions ("Competing Movants' Motion to Consolidate and Appoint Co-Lead Counsel"). *Pittrof v. Xie et al.*, 3:25-cv-08592-AMO, ECF No. 23; *Marrinan v. Xie et al.*, 3:25-cv-09546-AMO, ECF No. 32; *Foster v. Xie et al.*, 3:25-cv-09611-AMO, ECF No. 32; *LR Trust v. Xie et al.*, 3:25-cv-10350-AMO, ECF No. 18.

directors ("Individual Defendants") arising out of Fortinet's touting of a purportedly "record" 2026 firewall refresh cycle as a major growth driver—claiming 650,000 units would generate $400-450 million in revenue through the 2026 upgrade cycle —when the company lacked a basis for making those representations as to upgrade activity. Eventually, Fortinet was forced to disclose that it was already approximately 40-50% through the 2026 upgrade cycle, lacked visibility into lower-end device refresh activity, and that the refresh would have limited financial impact because the devices were very old and represented a small percentage of its current business. As such, the Company expected the balance of upgrades to occur over the following six quarters, materially diluting the duration and impact of the refresh. In response, the stock price dropped $21.28, or more than 22%, from $96.58 per share at the close of trading on August 6, 2025, to $75.30 per share at the close of trading on August 7, 2025.

The Actions each arise out of substantially similar facts and circumstances, plead claims on behalf of the Company against a number of the same Defendants, and present common issues of law and fact. As such, the Actions plainly meet the requirements for consolidation under Fed. R. Civ. P. 42(a)(2) and should be consolidated together (the "Consolidated Action").

To further promote economy and efficiency for all parties, Movant further moves for the appointment of its counsel as Lead Counsel in the Consolidated Action, which would ensure that, among other things, Plaintiffs speak with a unified voice, that Defendants can rely upon agreements with Plaintiffs' counsel, and that confusion, inefficiency, and duplicative effort is avoided. Weiss Law has a long history of success in representative actions and has been appointed as Lead Counsel in this District over the application of the Competing Movants' counsel in the past, well-demonstrating that it is the best suited to serve as Lead Counsel in the Consolidated Action. *In re Apple Inc. Stockholder Derivative Litig.*, 2020 U.S. Dist. LEXIS 114375, at *3 (N.D. Cal. June 29, 2020) (appointing Weiss Law as co-lead counsel because, among other reasons, the firm has "recovered substantial sums of money in extensively litigated derivative actions, including ones in which it appeared as lead or co-lead counsel"). Indeed, Weiss Law has successfully served as sole

lead counsel in important derivative litigation, securing the largest monetary recovery in a derivative action relating to a data breach. *In re Equifax, Inc. Deriv. Litig.*, No. 18-CV-00317-TWT, (N.D. Ga.). Weiss Law is exceptionally well-qualified to serve as Lead Counsel. With offices in New York, California, and Georgia, Weiss Law is among the established leaders of the shareholder rights bar and has secured hundreds of millions of dollars and important corporate governance reforms for public companies nationwide. Weiss Law possesses the experience, skills, staff, and technology infrastructure necessary to prosecute these derivative claims efficiently and effectively.

The appointment of a leadership structure would help to realize the efficiencies promised by consolidation, simplify the administration of the Consolidated Action, and facilitate the effective representation of Fortinet's interests. Weiss Law communicated with the Competing Movants' counsel in a good-faith effort to reach an agreement that balanced inclusion with the need for a simple and cohesive leadership structure capable of coordinating communications among counsel and the Court, avoiding unnecessary duplication of effort, and advancing Fortinet's derivative claims. Unfortunately, the Competing Movants' counsel failed to comply with the meet-and-confer requirements and rushed to file a preemptive motion seeking appointment of co-lead counsel. In contrast, Weiss Law meaningfully met and conferred with the Competing Movants' counsel, as required by the Court's rules, and only completed that process on January 19, 2026, prior to filing the instant Motion.

Weiss Law has already demonstrated its commitment to this Action, as well as its skilled and practical leadership, by timely filing a high-quality complaint and promptly engaging with other plaintiffs' counsel in an effort to reach consensus on leadership. Indeed, Weiss Law is the only Movant to have pled standing to bring claims derivatively in the manner required by courts within the Ninth Circuit. Moreover, Weiss Law's complaint includes a director-by-director analysis in support of its pleading of demand futility, alleging particularized facts as to each director rather than relying on group pleading—precisely the type of pleading rigor courts in this District have emphasized in evaluating leadership motions.

In sum, LR Trust satisfies the contemporaneous and continuous ownership requirements for derivative standing, has filed a high-quality pleading, and has retained counsel with extensive experience in derivative litigation. Accordingly, the LR Trust's Motion should be granted, the Actions should be consolidated, and Weiss Law should be appointed as Lead Counsel for the Consolidated Action.

## II. PERTINENT FACTS

### A. Factual Background

The captioned stockholder derivative actions are brought against certain of the Company's directors and officers for their breaches of fiduciary duties and violations of the federal securities laws, as well as other misconduct, which resulted in substantial damage to the Company and its stockholders.[2]

Fortinet develops and sells cybersecurity solutions, including its flagship FortiGate firewall appliances, related network security hardware, and subscription security services. Fortinet's revenues come primarily from selling these products and associated software licenses, as well as from recurring service offerings such as security subscriptions, support, and cloud-based solutions. ¶ 51.

Beginning in late 2024, Fortinet, its directors and officers, promoted a purportedly "record" 2026 FortiGate firewall refresh and forced upgrade cycle as a major growth driver. The Company represented that 650,000 FortiGate units—about one-quarter of the installed base—would reach end of support in 2026 and generate roughly $400–$450 million in product revenue over two years, even though Fortinet lacked reliable visibility into how many devices were active, how many had already been replaced, and how much of the apparent demand was incremental, particularly in lower-end and channel-driven segments where registration and end-user data were incomplete. ¶¶ 52-55.

[2] All citations to "¶_" refer to paragraphs of the Verified Stockholder Derivative Complaint in *LR Trust v. Xie, et al.*, Case No. 3:25-cv-10350-AMO, ECF No. 1.

Over the ensuing months, Fortinet reiterated this refresh narrative in earnings releases, investor calls, and public filings, and framed the 2026 refresh cycle as an unusually large opportunity that would build momentum through 2027. ¶¶ 56-75.

However, on August 6, 2025, Fortinet announced second quarter 2025 results and disclosed for the first time that it was already approximately 40–50% of the way through the 2026 upgrade cycle as of June 30, 2025, based on remaining active units and service contracts. The Company, its directors and officers acknowledged that the Company lacked visibility in refresh activity for lower-end devices, which Fortinet could "only" track through registration rates, and admitted that even if all eligible products were upgraded within one or two years, the refresh would have limited financial impact because the devices were very old and represented "a much smaller percentage" of Fortinet's current business. ¶¶ 76-79.

In the wake of the disclosures regarding the Company's true business condition, as well as the related financial impact thereof, Fortinet's stock spiraled downward by more than 22% and securities class action lawsuits began to be filed against the Company, its Chief Executive Officer, President, and its current and former Chief Financial Officer. ¶¶ 80-82. As such, the Company is subject to substantial liability and will be forced to expend substantial sums to defend itself, as well as its directors and officers.

During the time that the Company's stock was inflated due to the false and misleading statements and material omissions disseminated regarding the Company's financial condition and business prospects, the Individual Defendants, in breach of their fiduciary duties, caused Fortinet to repurchase 4.6 million shares of its common stock on the open market, overpaying by over $57.9 million. ¶¶ 84-89, 97-102. As the Company was being caused to repurchase its stock on the open market, certain of the Individual Defendants, while in possession of material non-public information regarding the Company's true financial condition and business prospects, were selling their own Fortinet shares, reaping over $161 million in proceeds. ¶ 83.

The LR Trust seeks recovery for Fortinet from the Individual Defendants for their breaches of fiduciary duty and other misconduct, and remediation of the internal control weaknesses that afflict Fortinet. ¶¶ 8-9, § VIII.

### B. Procedural History and Plaintiffs' Negotiations

Prior to the Competing Movants' filing of their Motion to Consolidate and Appoint Co-Lead Counsel, their counsel knew of the filing of Plaintiff LR Trust's shareholder derivative action in this Court and contend that they reached out to LR Trust's counsel to discuss coordination, but that "no definitive position was provided." *LR Trust v. Xie et al.*, 3:25-cv-10350-AMO, ECF No. 18 at 5; 18-1 ¶ 7. That representation is deceptive, at best.

On December 11, 2025, counsel for LR Trust spoke with the Competing Movants' counsel in order to forge a plan to work cooperatively and coordinate the Actions. Counsel for the Competing Movants responded that he would speak with his co-counsel and follow up. But counsel for the Competing Movants never followed up. Elkins Decl. ¶ 3. As such, on January 8, 2026, LR Trust's counsel again reached out via email, scheduling a call to discuss coordination that never occurred. *Id.* ¶ 6. Instead, without any additional communication, the Competing Movants proceeded to file their motion to consolidate the Actions and appoint themselves as Co-Lead Counsel. *Id.* ¶ 8; *LR Trust v. Xie et al.*, 3:25-cv-10350-AMO, ECF No. 18.

On January 19, 2026, at a meet and confer scheduled by the LR Trust's counsel, the parties were unable to reach agreement on the LR Trust's requested leadership structure. Elkins Decl. ¶ 10.

## III. THE RELATED ACTIONS SHOULD BE CONSOLIDATED

Under Rule 42(a), "[t]he district court has broad discretion … to consolidate cases pending in the same district." *Investors Research Co. v. U.S. Dist. Ct. for C.D. Cal.*, 877 F.2d 777, 777 (9th Cir. 1989). Here, the related actions should be consolidated for all purposes because all of the related Actions are shareholder derivative actions filed on behalf of Fortinet, arise from substantially similar facts and circumstances, and assert claims against similar defendants. *See* Rule 42(a) ("If actions before the court involve a common question of law or fact, the court may … consolidate the

actions[.]”). Consolidation will also avoid unnecessary cost, delay and overlap in adjudication. *In re Wells Fargo & Company Sh. Derivative Litig.,* 2017 WL 130282, *2, No.16-cv-05541-JST (N.D. Cal. Jan. 12, 2017). All parties agree that consolidation of the related Actions is appropriate under Rule 42(a).

## IV. WEISS LAW SHOULD BE APPOINTED LEAD COUNSEL

Courts have broad discretion to appoint lead counsel to ensure the effective and efficient prosecution of consolidated actions. *See, e.g., Hacker v. Peterschmidt*, 2006 WL 2925683, at *2-3 (N.D. Cal. Oct. 12, 2006) (the district court, “if it sees fit, may appoint one or more attorneys as liaison counsel, lead counsel, or trial counsel for the consolidated cases and accordingly assign the designated lawyers specific responsibilities.”).[3] In selecting lead counsel, the “guiding principle” is who will “best serve the interest of the plaintiffs.” *Millman ex rel. Friedman’s, Inc. v. Brinkley*, 2004 WL 2284505, at *3 (N.D. Ga. Oct. 1, 2004). Courts consider counsel’s qualifications and experience; the number, size, and extent of involvement of represented litigants; the stage of the proceedings; the nature of the causes of action alleged; counsel’s access to the resources necessary to prosecute the claims effectively; and the quality of the pleadings. *Id.* Each of these factors weighs in favor of appointing Weiss Law as Lead Counsel.

### A. Weiss Law’s Extensive Experience And Record Of Success Supports Its Appointment As Lead Counsel

Weiss Law’s impressive record of leading successful cases in complex and often multi-jurisdictional, derivative and representative litigation supports its appointment as Lead Counsel. Over more than four decades, Weiss Law has recovered in excess of $1 billion for investors and institutions and has achieved meaningful and substantial corporate governance reforms, demonstrating Weiss Law’s capacity to manage coordinated litigation and deliver results to the benefit of the corporations and its stockholders. *See* Weiss Law Resume, attached to Elkins Decl. as Ex. A.

[3] All emphasis is added, citations and footnotes, as well as internal quotations, are omitted unless otherwise noted.

David C. Katz will serve as the lead attorney for Weiss Law on this matter. Mr. Katz is the Chair of the Firm's Corporate Governance Litigation Practice Group and a Principal of the firm, with which he has litigated derivative and class actions for over thirty years. Ex. A at 12. Mr. Katz has served as lead and co-lead counsel in numerous derivative and class actions resulting in substantial recoveries. Joshua M. Rubin, Partner at Weiss Law, and Mark D. Smilow, a Principal of the firm, are among the other Weiss Law attorneys assigned to this matter and have proven equally adept in representing stockholder-plaintiffs over the course of their multi-decade careers representing stockholders in derivative and class action litigation. Ex. A at 14, 16.

Leveraging Weiss Law's well-established litigation capabilities, Mr. Katz has achieved significant recoveries for plaintiffs and the corporations they represent in derivative actions. For example, Mr. Katz was co-lead counsel in *Sadowsky v. Brendsel*, No. 05 cv 2596 (S.D.N.Y.), an action prosecuted derivatively on behalf of the Federal Home Loan Mortgage Corporation, in the wake of one of the country's largest corporate restatements. The litigation involved 78 depositions, with Mr. Katz responsible for the depositions of, among others, all of the company's outside directors, as well as the successful opposition to the several motions to dismiss filed by the defendants. Through these efforts, approximately $100 million was recovered for the company in addition to the enacting of material corporate governance reforms. Ex. A at 12. Mr. Katz also served as co-lead counsel in *In re Marsh & McLennan Derivative Litigation*, C.A. No. 753-VCS (Del. Ch.), a derivative action concerning the insurer's massive bid-rigging scheme. After defeating the defendants' motions to dismiss in the Delaware Court of Chancery and through protracted litigation involving dozens of depositions, $35 million was recovered for the company, along with substantial corporate governance reforms designed to ensure that such misconduct would not recur. *Id.* In *In re FirstEnergy Shareholder Derivative Litigation*, No. 03 cv 1826 (JSG) (N.D. Ohio), following one of the largest power outages in the country's history, Mr. Katz was part of the Weiss Law team that recovered $25 million for the company, and significant corporate governance measures were implemented. Ex. A at 13.

Mr. Katz recently served as Co-Lead counsel in *In re: Apple Inc. Stockholder Deriv. Litig.*, No. 19-cv-05153 (N.D. Cal. July 17, 2024), which concerned the "throttling" of older iPhones to disguise the effect of the devices' degrading lithium-ion batteries. In resolution, Apple, one of the largest and most well-financed companies in the world, agreed to enact a series of material corporate governance and internal control reforms designed to ensure that consumers receive better information, that the Board engages in vigorous oversight, and that disclosures are made in a truthful, accurate, and complete manner. Ex. A at 1. Mr. Katz also recently secured a substantial derivative recovery for PureCycle Technologies, Inc., a company engaged in the important emerging technology of Polypropylene recycling, in *In re: Purecycle Technologies, Inc. Deriv. Litig.*, No. 21-1569-RGA (D. Del. May 1, 2025), where Weiss Law was sole lead counsel, including a $3 million monetary recovery for the company, representing 30% of its damages, as well as significant corporate governance and internal control reforms aimed directly at preventing recurrence of the misconduct alleged, and the substantial damage that would follow. Mr. Katz argued in favor of the settlement at a two and half hour hearing to secure final approval. Ex. A at 13.

Mr. Katz has scored notable victories at the appellate level for shareholders as well, including reversing the dismissal of a consumer class action lawsuit that had been pending for nearly ten years. *L.S. v. Webloyalty.com, Inc.*, 954 F.3d 110 (2d Cir. March 20, 2020) (reversing grant of summary judgment); *L.S. v. Webloyalty.com, Inc.*, No. 15-3751, 673 Fed. Appx. 100 (2d Cir. Dec. 20, 2016) (vacating dismissal in part and remanding for further proceedings); *see also Bensinger v. Denbury Res. Inc.*, No. 13-337, 561 Fed. Appx. 24 (2d Cir. March 28, 2014) (denying defendants' appeal of class certification order); *Tilton v. Jacob* (*In re Synergy Pharms. Inc.*), No. 21-2724, 2023 U.S. App. LEXIS 22598 (2d Cir. Aug. 28, 2023) (vacating judgment of dismissal in part); *McMullen v. Hamilton*, Nos. 20-3705 (L), 20-3710 (Con), 2021 U.S. App. LEXIS 13149 (2d Cir. Apr. 21, 2021) (denying appeal of consolidation order).

Mr. Rubin likewise has been instrumental in obtaining substantial recoveries for corporations and shareholders in derivative litigation. As sole lead counsel in *In re Equifax, Inc. Derivative*

*Litigation*, No. 1:18-CV-00317-TWT (N.D. Ga.), Mr. Rubin played a key role in securing a $32.5 million recovery to address damages the company incurred in connection with a data breach that compromised the personal information of over 140 million people, which at the time was the largest recovery in a derivative action arising from a data breach. Ex. A at 15. Mr. Rubin also played a key role in *Purecycle Technologies, Inc. Deriv. Litig.*, coordinating among numerous firms across different jurisdictions, the negotiation and drafting of the stipulation of settlement, through the filing of the motion for final approval of the settlement. *Id.* Mr. Rubin also played a key role as Executive Committee Counsel in *In re Pinterest Derivative Litigation*, No. 20-cv-08331 (N.D. Cal.), and was instrumental in securing a first of its kind settlement requiring Pinterest to commit $50 million to a comprehensive set of workplace and Board-level reforms designed to protect employees from discriminatory treatment as an extension of its product and brand. *Id.*

Mr. Smilow's track record is equally impressive. Mr. Smilow represented shareholders of Jones Pharma Incorporated who exchanged their shares for those of King Pharmaceuticals, Inc., which culminated in a total settlement of $38.25 million (*In re King Pharmaceuticals, Inc. Securities Litigation*, 03 cv 77, (E.D. Tenn.)); shareholders of Martha Stewart Living Omnimedia, Inc. in a class action that culminated in a $30 million settlement (*In re Martha Stewart Living Omnimedia, Inc. Sec. Litig.*, 02 cv 6273 (JES) (S.D.N.Y.)); and the shareholders of KeySpan Corporation in a securities fraud case culminating in a $13.75 million settlement (*In re KeySpan Corp. Sec. Lit.*, 2001 cv 5852,(E.D.N.Y.)). Many of Mr. Smilow's cases produced reported opinions of great interest to practitioners, including *Baum v. Keystone Mercy Health Plan*, 826 F. Supp. 2d 718 (E.D. Pa. 2011); *Minzer v. Keegan*, 218 F.3d 144 (2d Cir.2000), *cert. denied*, 531 U.S. 1192 (2001); *Sedighim v. Donaldson, Lufkin & Jenrette, Inc.*, 167 F. Supp. 2d 639 (S.D.N.Y. 2001); and *Rosenfeld v. Port Auth.*, 108 F. Supp. 2d 156 (E.D.N.Y. 2000). Ex. A at 17.

Weiss Law has also achieved significant recoveries as lead or co-lead counsel for stockholders in dozens of securities class actions, many of which Messrs. Katz and Rubin actively litigated. *See, e.g., Spahn v. Edward D. Jones & Co., et al.*, No. 04 cv 00086 (E.D. Mo.) ($127.5 million); *Bachman,*

*et al., v. A.G. Edwards, Inc., et al.*, No. 22052-01266-03 (Cir. Ct., St. Louis, Mo.) ($60 million); *Brody v. Hellman, et al. (U.S. West Dividend Litigation)*, No. CV-4142 (Dist. Ct. for the City & Cty. Of Denver, Colo.) ($50 million); *In re Community Psychiatric Centers Sec. Litig.*, No. SACV-91-533(AHS) (C.D. Cal.) ($42.5 million); *In re Apria Healthcare Group Sec. Litig.*, No. 797060 (Cal. Super. Ct.- Orange Cty.) ($42 million); *Levitan v. McCoy, et al. (First Commerce)*, No. 00 C 5096 (N.D. Ill.) ($39.9 million); *In re King Pharmaceuticals, Inc. Sec. Litig.*, No. 03 cv 77-TWP (E.D. Tenn.) ($38.25 million); *In re McLeodUSA Inc. Sec. Litig.*, No. C02-0001-MWB (N.D. Iowa) ($30 million); *In re Martha Stewart Living Omnimedia, Inc. Sec. Litig.*, No. 02 cv 6273-JES (S.D.N.Y.) ($30 million); *In re Vodafone Group, PLC Sec. Litig.*, No. 02 cv 7592-AKH (S.D.N.Y.) ($24.5 million).

The experience and results achieved by the Weiss Law attorneys involved in this case reflect the firm's experience successfully leading complex derivative litigation on behalf of corporations. That experience demonstrates Weiss Law's capacity to commit the personnel, technological infrastructure, and financial resources necessary to effectively represent Fortinet's interests in this action, which is expected to involve substantial fact and expert discovery, motion practice, and remedial investigation and analysis.

**B. Weiss Law's High-Quality Pleading And Efforts To Coordinate And Advance The Litigation To Date Supports Appointment As Lead Counsel**

Weiss Law's timely, high-quality pleading and the leadership already demonstrated in negotiating among plaintiffs and defense counsel, as well as among plaintiffs' counsel regarding an effective leadership structure, support its appointment as Lead Counsel.

The LR Trust Complaint is the product of a thorough and well-documented investigation. The LR Trust supports its particularized fact allegations and well-reasoned inferences with details culled from thousands of pages of public records, including SEC filings, press releases, financial analyst reports, business-oriented media articles, and Fortinet's corporate governance disclosures and documents on its website demonstrating its counsel's diligent investigation of the facts and circumstances at issue.

In addition, the LR Trust's complaint includes detailed, director-by-director, factual allegations in support of its contention that demand on Fortinet's Board would be futile. *Kamen v. Kemper Fin. Servs. Inc.*, 500 U.S. 108, 108-09 (1991). The director-by-director analysis alleges particularized facts as to each director rather than relying on group pleading. *RePET, Inc. v. Zhao*, 2016 U.S. Dist. LEXIS 197747, at *15 (C.D. Cal. June 28, 2016) ("Plaintiff must allege facts specific to each director demonstrating a lack of independence.").

Moreover, the LR Trust pleads its standing to bring suit in accordance with relevant Ninth Circuit authority interpreting Rule 23.1(b) as requiring a derivative plaintiff to precisely indicate the stock acquisition date in the complaint in order to ensure that the stockholder held stock at the time of the transactions complained of in the derivative lawsuit. *See, e.g., In re Rocket Fuel Inc. Derivative Litig.*, Case No. 15-cv-04625-PJH, 2016 U.S. Dist. LEXIS 115023, at * 11 (N.D. Cal. Aug. 26, 2016) ("this court has previously held that the specific dates of stock purchase must be pled to establish standing under Rule 23.1"); *Sokolowski v. Adelson*, 14–CV–111 JCM, 2014 U.S. Dist. LEXIS 103901, at * 7 (D. Nev. July 30, 2014) ("[C]ourts in the Ninth Circuit have interpreted Rule 23.1(b) as requiring plaintiff to precisely indicate the stock acquisition date in the complaint."). The LR Trust expressly pleads its date of purchase of Fortinet stock (¶ 14), in compliance with this authority, which establishes its standing to bring the claims at issue and reflects its counsel's familiarity with the rules and requirements for derivative litigation in this District.

In addition to the quality of its pleadings, Weiss Law worked vigorously, effectively and efficiently to coordinate and organize the related Actions. Weiss Law engaged with the Competing Movants' counsel in good faith in an effort to reach a consensus and avoid burdening the Court with motion practice. Elkins Decl. ¶¶ 3-10. Unfortunately, plaintiffs were not able to reach agreement on a streamlined leadership structure that Weiss Law could support as ensuring the efficient and effective coordination of plaintiffs' efforts. *Id.* Accordingly, LR Trust proposes that the Court appoint Weiss Law as Lead Counsel in the Consolidated Action. Appointing the single firm best equipped to litigate the Consolidated Action as Lead Counsel will prevent duplication of efforts, ensure coherent

leadership, efficient and reliable communication among plaintiffs, defendants, and the Court, and provide the most effective representation of Fortinet's interests in the derivative claims.

### C. The Appointment of Weiss Law As Lead Counsel Promotes Efficiency And Prevents Duplication Of Effort

The appointment of lead counsel in derivative litigation is not designed to "divid[e] the spoils" for the benefit of counsel, but rather to ensure the best possible representation for the corporation and its shareholders. *Sparano v Lief*, 2011 U.S. Dist. LEXIS 21144, *8 (C.D. Cal. March 3, 2011). Courts in this circuit have found that the purpose of selecting lead counsel is to limit the number of law firms for the purposes of economy and efficiency. *Rubenstein v. Scripps Health*, 2021 U.S. Dist. LEXIS 192182, at *11 (C.D. Cal. October 5, 2021); *In re Rakuten Browser Extension Litig.*, 2025 U.S. Dist. LEXIS 135966, at *5 (N.D. Cal. July 16, 2025) (failing to recognize the benefits in appointing multiple firms as co-lead counsel).

The appointment of Weiss Law as Lead Counsel provides efficient leadership which facilitates the effective representation of Fortinet's interests in the derivative claims, streamlines the process, and prevents the risk of the duplication of effort posed by the structure proposed by the Competing Movants. *Sparano*, 2011 U.S. Dist. LEXIS 21144, at *8 (Court agreed to appoint sole lead counsel to "prevent duplication of efforts and waste of resources" and to "ensure that counsel can speak with one voice on behalf of [the client], avoid unseemly conflicts, and ensure consistency in the prosecution of derivative claims on the Company's behalf.").

Weiss Law can capture the efficiencies promised by consolidation through effective coordination of litigation efforts and streamlined communications with the Court and defense counsel. The appointment of lead counsel is designed to eliminate "duplication and repetition" by creating "a coordinator of diffuse plaintiffs through whom motions and discovery proceedings will be channeled[.]" *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 774 (9th Cir. 1977) (quoting *MacAlister v. Guterman*, 263 F.2d 65, 69 (2d Cir. 1958)).

## V. CONCLUSION

For the foregoing reasons, Plaintiff LR Trust respectfully requests that the Court grant its Motion to Consolidate the Related Derivative Actions and to Appoint Weiss Law Lead Counsel for plaintiffs in the Consolidated Action and grant to Plaintiff such other and further relief as would be just and proper under the circumstances.

Dated: January 22, 2026

**WEISS LAW**

By: */s/ Joel E. Elkins*
Joel E. Elkins
1801 Century Park East, 24th Floor
Los Angeles, CA 90067
Telephone: 310/208-2800
Facsimile: 310/209-2348

*Attorneys for Plaintiff LR Trust and [Proposed] Lead Counsel*

**OF COUNSEL:**

**WEISS LAW**
David C. Katz
Mark D. Smilow
305 Broadway, 7th Fl.
New York, NY 10007
Telephone: (212) 682-3025
Facsimile: (212) 682-3010
Email: dkatz@weisslawllp.com
msmilow@weisslawllp.com

Joshua M. Rubin
4 Brighton Rd., Ste. 204
Clifton, NJ 07014
Email: jrubin@weisslawllp.com

**CERTIFICATE OF SERVICE**

I, Joel Elkins, am the ECF User whose ID and password are being used to file this Notice of Motion and Motion of Plaintiff LR Trust to Consolidate Related Derivative Actions and to Appoint Weiss Law as Lead Counsel; Memorandum of Points and Authorities in Support Thereof.

*/s/ Joel Elkins*
JOEL ELKINS